SERVICE EMPLOYEES' INTERNATIONAL UNION, LOCAL 79,
AFL-CIO v MONROE MERCY HOSPITAL

1. LABOR RELATIONS—UNFAIR LABOR PRACTICES—REFUSAL TO BAR-
GAIN—MAJORITY STATUS.

An employer cannot shut its eyes to the facts, express no doubt
as to a union's majority status, deal with it as the constituted
employee representative, and then, when the matter is em-
broiled in lengthy litigation, argue that it acted on a good faith
belief that the union did not have majority status.

2. LABOR RELATIONS—WITHDRAWAL OF RECOGNITION—MAJORITY STA-
TUS.

As a general proposition, the appropriate time for a withdrawal
of recognition based on a reasonable doubt of a union's major-
ity status is when the union demands bargaining for a new
contract.

3. LABOR RELATIONS—ELECTIONS—CLOSENESS OF ELECTION—MAJORITY
STATUS—GOOD FAITH DOUBT.

The closeness of an election is a factor tending to establish the
good faith of an employer's doubt that a union has majority
status; however, any inference was offset by a lapse of two
years between the election and the employer's questioning of
the union's majority status.

4. LABOR RELATIONS—MAJORITY STATUS—DISCHARGES—REPLACE-
MENTS.

Discharge and replacement of employees in a bargaining unit is
no evidence of a loss of majority status by a union.

5. LABOR RELATIONS—PRESUMPTION OF REPRESENTATIVE STATUS—BUR-
DEN OF PROOF.

The presumption of representative status continues until an
employer overcomes it; therefore, the burden is on the em-

REFERENCES FOR POINTS IN HEADNOTES

[1–5] 48 Am Jur 2d, Labor and Labor Relations §§ 645, 651–653, 662–667.

[6] 48 Am Jur 2d, Labor and Labor Relations §§ 80, 767.

[7] 5 Am Jur 2d, Appeal and Error § 717.

ployer to demonstrate that the union, in fact, no longer enjoyed majority support on the date of the refusal to bargain, or that the refusal was predicated upon a reasonably grounded good faith doubt of majority support.

6. LABOR RELATIONS—STRIKES—FAILURE TO STRIKE—BARGAINING REPRESENTATIVE.

An employee's failure to join a strike, or his subsequent abandonment of a strike, cannot give rise to any presumption that he repudiates the union as his bargaining representative, absent supporting evidence.

7. LABOR RELATIONS—JUDICIAL REVIEW—PRESERVING QUESTION—OBJECTION.

An employer cannot be heard to raise objections on appeal which were not raised before the Employment Relations Commission where there was no showing that the employer's failure or neglect to urge the objection was excused because of extraordinary circumstances (MCLA 423.23[e]).

Appeal from Michigan Employment Relations Commission. Submitted Division 1 January 17, 1974, at Detroit. (Docket No. 17370.) Decided March 15, 1974. Leave to appeal denied, 391 Mich 839.

Service Employees' International Union, Local 79, AFL-CIO, brought charges against Monroe Mercy Hospital for unfair labor practices. The Michigan Employment Relations Commission ordered the hospital to commence collective bargaining with the union. Defendant hospital appeals by leave granted. Affirmed.

*Haggerty & Franklin,* for plaintiff Service Employees' International Union, Local 79, AFL-CIO.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Francis W. Edwards,* Assistant Attorney General, for appellee Michigan Employment Relations Commission.

*Keller, Thoma, McManus, Toppin & Schwarze, P. C.,* for defendant Monroe Mercy Hospital.

Before: V. J. BRENNAN, P. J., and BASHARA and CARLAND,* JJ.

BASHARA, J. Defendant appeals from a decision of the Michigan Employment Relations Commission (MERC) directing it to begin collective bargaining with the plaintiff union.

On May 20, 1970, an election was conducted by the MERC to determine whether certain employees of defendant hospital desired to be represented by the plaintiff union. As a result of the election, the union was certified as the bargaining agent of these employees on May 28, 1970, and the union began negotiating with the hospital for a contract. After some 15 to 19 bargaining sessions, the union, believing an impasse had been reached, applied for a governor's special commission hearing pursuant to MCLA 423.13a; MSA 17.454(14.2); MCLA 423.13b; MSA 17.454(14.3). A commission was convened, hearings were held, and on April 8, 1971, a report was issued. The union indicated it was willing to accept the commission's recommendations, while the hospital indicated it would work within the framework of the commission's report, but had reservations concerning the length of the contract and the provision for union security.

A last-offer strike vote was conducted on May 14, 1971. The vote was 97 to 60 in favor of rejecting the hospital's last offer and striking, 1 ballot was spoiled, and 11 ballots were contested. On May 1, 1972, the union struck against the hospital. Although meetings between the parties were held on May 15, June 1, and June 9, 1972, in an effort

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

to resolve the strike, no progress was made. Of the employees in the bargaining unit 106 actually struck, 39 either did not strike or initially struck but later returned to their jobs, and 82 new employees were hired to replace the striking workers.

By a letter dated June 30, 1972, the hospital notified the union that it did not believe the union represented a majority of the employees in the bargaining unit, and as a consequence, the hospital would no longer continue to bargain with the union as the representative of these employees. In response, the union filed unfair labor practice charges against the hospital alleging that it had unilaterally changed working conditions, discriminatorily excluded strikers from the group hospitalization plan, and refused to bargain with the union in violation of MCLA 423.16(1), (6); MSA 17.454(17), [1], [6]. A hearing on the foregoing charges was held before an administrative law judge who determined that the union did not represent a majority of the employees in question, and that the hospital had not violated the statute. In addition, it was recommended that the charges against the hospital be dismissed. The union filed exceptions with the Michigan Employment Relations Commission. After consideration, MERC concluded, contrary to the ruling of the administrative judge, that the 39 employees who had either not struck or who had struck and thereafter returned to work should have been counted as members of the union thereby giving the union majority status in the bargaining unit. The commission also decided that there were no other objective facts establishing the hospital's good faith doubt of the union's majority status and as a result the hospital's refusal to bargain was not in good faith and in violation of § 16(6) of the labor relations

mediation act. The hospital appeals from the foregoing decision.

The two major issues and corresponding sub-issues will be treated seriatim.

I. *Failure of record to establish the "good faith doubt" defense*

The defendant contends that there were reasonable grounds for it to believe that the union had lost its majority status. We disagree.

The record reveals that the hospital continued to bargain with the union after the May 1, 1972 strike and actually recognized the union as its employees' bargaining agent until June 30, 1972, when it notified the union by letter that it did not believe the union represented a majority of the employees in the bargaining unit. However, the hospital now claims that its doubt about the union's majority status developed gradually and that factors existing before June 30, 1972, provide a reasonable basis for that doubt.

It is clear that an employer cannot "shut its eyes to the facts", express no doubt as to the union's majority status, deal with it as the duly constituted employee representative, and then, when the matter is embroiled in lengthy litigation, argue that it acted on a "good faith" belief. *NLRB v Economy Food Center, Inc,* 333 F2d 468, 472 (CA 7, 1964); *NLRB v Elliott-Williams Co, Inc,* 345 F2d 460, 463–464 (CA 7, 1965); *Happach v NLRB,* 353 F2d 629 (CA 7, 1965). In *Lodges 1746 & 743 Int Association of Machinists and Aerospace Workers, AFL-CIO v NLRB,* 135 US App DC 53, 57; 416 F2d 809, 813 (1969), the Court commented on the danger of such a delay to the bargaining process when it stated:

"In support of this finding, the Board here urges upon us that the company's withdrawal of recognition, timed as it was, could not have been in good faith. As a

general proposition, we agree that the appropriate time for a withdrawal of recognition based on reasonable doubt of a union's majority status is when the union demands bargaining for new contract. To permit an employer to 'save' his doubts for use at his convenience might subvert the bargaining process by providing him with a club to hold over the heads of the union negotiators."

The defendant, citing *Lane Drug Co v NLRB,* 391 F2d 812, 819 (CA 6, 1968), next contends that the closeness of an election is a factor tending to establish the good faith of an employer's doubt that a union has majority status. While we agree with this statement, it is not applicable to the present case since any inference that might have been drawn from the results of the election was offset by the lapse of time of more than two years between the election and the hospital's letter raising the question of majority status. The record shows that since the date of the election, rather than losing support, the union actually increased the number of its supporters, since 110 of its members went out on strike, while only 86 had previously voted in favor of the union. Since the hospital knew of the union's increased support, this fact, apparent from the record, contradicts the hospital's post-strike assertion that it relied on the closeness of the election on producing, in part, a "good faith" doubt as to the union's majority status.

The defendant argues that high employee turnover, resulting in 175 changes in the composition of the original voting unit,[1] contributed to its doubt that the union still represented a majority of its employees. In *NLRB v John S Swift Co, Inc,* 302 F2d 342, 345 (CA 7, 1962), the Court stated:

---

[1] 55 employees had left the employ of the hospital and 120 new employees had been hired.

"[T]he record is devoid of evidence establishing that the union in fact lost its majority status. The discharges and replacements show only a turnover of employees in the unit. Of itself such turnover is no evidence of loss of majority status by the union."

We are inclined to agree with the above statements and thus feel that the mere fact that employees have been replaced is without significance. See also *NLRB v Gulfmont Hotel Co,* 362 F2d 588 (CA 5, 1966).

The hospital also asserts that since the union had indicated its intention to obtain signed membership cards from its members, its failure to present the cards to the hospital indicates that the union was unable to obtain sufficient signatures to prove its majority status. This contention is without merit.

The presumption of representative status continues until the employer overcomes it. Therefore, the burden is on the employer, not the union, to raise the issue. The presumption may be overcome, according to the authorities, if the employer demonstrated that the union, in fact, no longer enjoyed majority support on the date of the refusal to bargain, or that the refusal to bargain was predicated upon a reasonably grounded good faith doubt of majority support. *Terrell Machine Co v NLRB,* 427 F2d 1088 (CA 4, 1970); *NLRB v Security Plating Co,* 356 F2d 725 (CA 9, 1966); *NLRB v Crown Can Co,* 138 F2d 263 (CA 8, 1943), *cert den,* 321 US 769; 64 S Ct 527; 88 L Ed 1065 (1944).

Finally, the hospital alleges that the union was guilty of "bad faith" bargaining because it sought to change items late in the negotiations. A review of the record reveals that upon being dissatisfied with the governor's panel report, it was the hospital, not the union, that reasserted its previous

position and submitted to the union a completely different proposal based upon tentative agreement made prior to the convening of the governor's panel. The union agreed to consider this plan. The record does not reveal any conduct by the union which would sustain an allegation of bad faith bargaining.

In summary, we feel that the hospital's evidence is insufficient to support an honest good faith doubt as to the union's majority status. The decision of the Michigan Employment Relations Commission was amply supported by competent, material, and substantial evidence on the whole record.

II. *Employees refusing to strike*

The defendant claims that the finding by the Michigan Employment Relations Commission that "an employer may not rely on the employees who have refused to strike in determining the majority status of the Union" is an erroneous statement of the law. We disagree, for the weight of authority supports the Commission's finding.

In *Retail, Wholesale and Department Store Union, AFL-CIO v NLRB,* 466 F2d 380, 394 (CA DC, 1972), the Court made the following statement:

"The Board has long held, with judicial approval, that an employee's failure to join a strike, or his subsequent abandonment of a strike, cannot give rise to any presumption that he repudiates the Union as his bargaining representative. Thus, it was not improper for the Board to conclude that the Company had no appropriate basis for doubting that a majority continued to support the Union, and to order it to bargain."

The most recent discussion of the principle that an employer cannot rely on the employees who have refused to strike in determining union majority status is found in *Allied Industrial Workers*

*ALF-CIO Local Union No 289 v NLRB,* 155 US
App DC 112, 125; 476 F2d 868, 881 (1973), where
the Court said:

"In the present case the Employer attempted to
bolster this evidence by testifying that on December 4,
the date on which it refused to bargain, more persons
were crossing the picket line to work than were strik-
ing. It has been held time and again, however, that an
employee's return to work during a strike does not
provide a reasonable basis for presuming that he has
repudiated the union as his bargaining representative.
(Citations omitted.)

"Absent supporting evidence it may mean no more
than that he was forced to return to work for financial
reasons or that he did not support the strike in ques-
tion."

The commission's finding on this point is clearly
in line with the federal decisions on the matter.
Therefore, the hospital's good faith doubt defense
is without merit.

III. *Did the Michigan Employment Relations
Commission err in its failure to find that the
union strike was illegal?*

The arguments advanced by the hospital under
this issue are made here for the first time. Neither
was evidence presented on this issue, nor was a
record made.

We agree with the commission's view that the
hospital cannot now be heard to raise objections
on appeal which were not raised before the com-
mission. This issue is foreclosed by MCLA
423.23(e); MSA 17.454(25)(e) which states in rele-
vant part:

"No objection that has not been urged before the
board, its member or agent, shall be considered by the
court, unless the failure or neglect to urge the objection
is excused because of extraordinary circumstances. The
findings of the board with respect to questions of fact if

supported by competent, material and substantial evidence on the record considered as a whole shall be conclusive."

In the instant case there was no showing that the hospital's failure or neglect to urge the objection was excused because of the extraordinary circumstances. In fact, the hospital did not even bother to file an answer to the union's charge.

Since the hospital's third issue also was not presented at the hearing or to the commission, that issue is similarly foreclosed.

Affirmed.

All concurred.